## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO *EX REL.*,
GARY KING, ATTORNEY GENERAL,

      Plaintiff,

vs.                                        Case No. 1:13-cv-00580-WPL-KBM

CITIGROUP INC., CITIBANK, N.A., and
DEPARTMENT STORES NATIONAL BANK,

      Defendants.

## AMENDED COMPLAINT

COMES NOW, Plaintiff, the State of New Mexico, by Attorney General Gary King ("the State"), who brings this Amended Complaint against Defendants, Citigroup Inc., Citibank, N.A., and Department Stores National Bank (collectively "Defendants" or "Citi"), and alleges as follows:

### INTRODUCTION

1.     This action stems from Defendants' marketing, selling, and administering various fee-based ancillary products and services to their New Mexico cardholders, which are supplementary to the credit provided by the credit card(s). Defendants have engaged in deceptive marketing and sales practices in connection with these ancillary products and services; failed to adequately disclose important terms and conditions about these ancillary products and services; failed to obtain New Mexico consumers' knowing consent to enroll in or pay for these ancillary services; and inadequately handled cancellation requests to the detriment of New Mexico consumers.

2.      Defendants market these ancillary products and services as providing protection for consumers against improper or unauthorized charges on their credit cards, identity theft, lost or stolen credit cards, and/or as providing benefits during unexpected life events. Defendants market and offer cardholders the ancillary products for each of the consumer's Citi credit card accounts; however, Defendants do not condition a consumer's ability to get a Citi credit card account on the consumer's agreement to purchase or sign-up for one or more of these ancillary products. Indeed, enrollment in these optional ancillary products is not related to, nor does it impact, Citi's decision to extend credit to these consumers.

3.      Upon information and belief, when consumers initiate contact with, or are contacted by, Defendants about Citi's credit cards, a process is triggered whereby a New Mexico consumer can unknowingly and unintentionally receive ancillary products. While this happens most often after a consumer is approved for a Citi credit card, Defendants also offer the consumer ancillary products during subsequent communications.

4.      Additionally, Defendants often enroll consumers in these products even though the consumers did not assent to pay for them. This process is referred to as "slamming." Enrollment may be based on highly deceptive and misleading telemarketing calls, forged or non-existent mailers, online applications, or nothing at all. In each instance, an unknowing consumer is charged a monthly fee for an ancillary product, without his or her meaningful consent or understanding that he or she has "purchased" these products. Defendants are in a position to slam this consumer because, unlike a typical marketer or seller, Defendants already have the consumer's credit card number by virtue of being the consumer's credit card company.

5.      Certain types of Defendants' ancillary products purport to pay a New Mexico consumer's required minimum monthly payment for a limited period of time under certain

triggering circumstances, such as involuntary unemployment, illness, or changes in family status; thereby, preventing the account from becoming delinquent. These ancillary products include, but are not limited to, the following: "Credit Protect," "Credit Protector," "Payment Protector," "PaymentAid," "PaymentAid Plus," and other monikers that all offer similar coverage (hereinafter collectively referred to as "Payment Protection Plan(s)," "Payment Protection," or "Plan(s)"). Furthermore, because Defendants make no effort to determine whether consumers are eligible for the benefits associated with the Plans at the time of sale, Defendants bill New Mexico consumers for this Payment Protection coverage, regardless of their status at the time of enrollment.

6.     Payment Protection Plans, such as those administered by Defendants, have come under increased scrutiny by the federal government[1] and been the subject of litigation brought by state attorneys general and private citizens alike.[2]

7.     Defendants engage in unfair, deceptive and unconscionable business practices, in violation of New Mexico's Unfair Practices Act, by selling and charging a cardholder for ancillary products, *e.g.,* Payment Protection, regardless of whether the consumer wanted the Plan and/or was entitled to benefits under the Plan; as well as by offering and administering a consumer's claim for benefits in an unfair, deceptive and unconscionable manner.

8.     Upon information and belief, in violation of Regulation Z, 12 CFR §§

---

[1]     *See, e.g.,* Credit Cards: Consumer Costs for Debt Protection Products Can be Substantial Relative to Benefits but are Not a Focus of Regulatory Oversight, U.S. Government Accountability Office, GAO-11-311, March 25, 2011 ("GAO Report") (Ex. 1); Marketing of Credit Card Add-on Products, Consumer Financial Protection Bureau, CPFB Bulletin 2012-06, July 18, 2012 ("CFPB Guidance") (Ex. 9).

[2]     *See, e.g., State of Minnesota v. Discover Fin. Servs.,* 27-cv-10-27510 (Minn. 4th Dist. Ct. Nov. 2, 2011) (Ex. 2); *State of West Virginia v. Citigroup Inc.*, 11-C-89-N (Mason Cty., W.Va. Cir. Ct. Aug. 16, 2011) (Ex. 3); *State of Mississippi v. Citigroup Inc.,* G2012-1083W/4 (Hinds Cty., Miss. Ch. Ct. June 28, 2012) (Ex. 4); *Spinelli v. Capital One Bank,* 8:08-cv-132-T-33EAJ (M.D.Fla. Nov. 23, 2010) (Ex. 5); *Kardonick v. JPMorgan Chase & Co.,* 10-cv-23235 (S.D.Fla. Sept. 16, 2011) (Ex. 6); *In re Discover Payment Protection Plan Marketing and Sales Practice Litig.,* 1:10-cv-06994 (N.D.Ill. May 10, 2012) (Ex. 7); *Esslinger v. HSBC Bank Nevada, N.A.*, 10-3213 (E.D.Pa. Dec. 13, 2012) (Ex. 8).

1026.4(d)(3), 1026.4(d)(4), 1026.6(b)(3)(ii)(F) and 1026.6(b)(5)(i), which was promulgated by the Consumer Financial Protection Bureau ("CFPB") pursuant to its authority under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), 12 U.S.C. § 5301 *et seq.*, Defendants did not (and do not) comply with the requirements applicable to these ancillary products, including *inter alia* failing to disclose the terms, conditions, and fees for these voluntary Payment Protection services.

9.     The State brings this *parens patriae* consumer protection lawsuit against Defendants to address their (a) use of unfair and deceptive methods, acts, conduct, and trade practices in connection with the sale of Payment Protection services; (b) use of unconscionable methods, acts, conduct, and trade practices in connection with their offers to sell Payment Protection services; and (c) failure to comply with Regulation Z's disclosure requirements.[3]

### PARTIES

10.     The State, by and through Attorney General Gary King, brings this action in its sovereign and quasi-sovereign capacity on behalf of the State to protect New Mexico consumers.[4]

11.     Upon information and belief, Defendant Citigroup Inc. ("Citigroup") is a Delaware corporation and, under Delaware law, it has the capacity to sue and be sued. Upon information and belief, Citigroup is a publicly traded financial services company with its principal place of business in New York, New York. Upon further information and belief, Citigroup is a bank holding company, which has control over Defendants Citibank, N.A. and

---

[3]     In bringing this action, the State does *not* challenge Defendants' ability to set the price for an ancillary credit card product; however, the State *does* challenge the method and manner in which Defendants marketed and administered Payment Protection services to New Mexico Residents.
[4]     Attorney General King is authorized to bring this action under N.M. Stat. Ann. §§ 57-12-8, 57-12-15, 8-5-2 & 8-5-3 and 12 U.S.C. § 5552(a).

Department Stores National Bank.

12.     Upon information and belief, Defendant Citibank, N.A. ("Citibank") operates a nationally chartered bank. Upon information and belief, Citibank is a subsidiary of Citicorp, which in turn is a subsidiary of Citigroup.

13.     Upon information and belief, Defendant Department Stores National Bank ("DSNB") is a subsidiary of Citibank. Upon information and belief, DSNB was chartered in 2005 and has its principal place of business in Sioux Falls, South Dakota. Upon information and belief, DSNB is the credit card issuer of retail private label accounts for Citibank's relationship with Macy's, Inc., which bear the marks of Macy's Inc.'s store brands such as Bloomingdale's and Macy's.

14.     At all times material herein, Defendants have been doing business, and continue to do business, within the City of Santa Fe, County of Santa Fe, State of New Mexico.

### *JURISDICTION AND VENUE*

15.     This Court has subject matter jurisdiction over Count II of this Amended Complaint pursuant to 12 U.S.C. §§ 5552(a) & 5565 and 28 U.S.C. §§ 1331 & 1337. This Court has supplemental jurisdiction over the state law claims – Count I – pursuant to 28 U.S.C. § 1367.

16.     This Court has jurisdiction over Defendants because they do business in New Mexico and have committed acts in New Mexico causing injury to New Mexico consumers.

17.     In accordance with 12 U.S.C. § 5552(a) and 28 U.S.C. § 1391, venue is proper in the District of New Mexico.

*FACTUAL BACKGROUND*

I.   **Defendants' Ancillary Products Are Marketed, Offered, and Sold to New Mexico Consumers in an Unfair, Deceptive, and Unconscionable Manner.**

    A.   **Defendants generate substantial revenue from marketing, offering, and selling ancillary products to cardholding New Mexico consumers.**

18.   Upon information and belief, Defendants offer, market and sell ancillary products to all Citi credit card holders, but most aggressively market these products to vulnerable New Mexico consumers who fall into the subprime credit category, who have low credit limits because of impaired credit ratings, or who are looking to establish or re-establish their credit.

19.   Defendants' ancillary products share common characteristics in that each are: (a) marketed to New Mexico consumers as protection from fraud or unauthorized account charges; (b) marketed to New Mexico consumers as a way for them to increase their financial security; (c) considered an optional product that is not required to maintain a credit card account with Citi; and (d) tethered to each consumer's specific Citi credit card account(s). Defendants' ancillary products have an associated monthly fee, which is separate and distinct from interest and other fees charged by Defendants as part of Citi's extension of credit to the consumer. Each Plan's fee is charged directly to the consumer's credit card account each month, with no separate statement, bill, or invoice provided.

20.   Contrary to Defendants' simply representations for marketing purposes, Citi's ancillary products are in fact a dense maze of limitations, exclusions, and restrictions, making it impossible for consumers to knowingly determine what these products cover and whether they provide a worthwhile benefit.

21.   Examples of Defendants' ancillary products include:

    a.   **Payment Protection** – This product allegedly safeguards consumers'

credit card accounts by crediting the required minimum monthly credit card payments due in certain highly restricted circumstances, or by permanently canceling accounts (up to $10,000 maximum) in other circumstances.

b. **Identity Theft Protection –** In exchange for a fixed-rate monthly fee, this product (also known as "IdentityMonitor") purports to monitor consumers' credit scores for indicia of identity theft and will alert the enrollees if something suspicious happens to their credit scores.

22.   Defendants have enrolled large numbers of New Mexico cardholders and charged them substantial sums of money for enrollment in these product Plans. These enrollment fees, as imposed by Defendants, are separate charges for a service independent of Defendants' extension of credit to New Mexico consumers.

23.   Defendants' extension of credit is not contingent on a cardholder's purchase of any of Citi's ancillary products, including Payment Protection. Each Plan is an optional, ancillary service for which a separate fee is charged.

**B.   Defendants sign-up unsuspecting cardholding New Mexico consumers for ancillary products without their meaningful, knowing authorization or consent.**

**1.   Defendants market Payment Protection Plans to New Mexico consumers in an unfair, deceptive, and unconscionable manner.**

24.   Defendants often enroll consumers in these products using highly deceptive and misleading telemarketing calls; thereby, charging some New Mexico consumers without their meaningful consent or understanding that they have "purchased" these products. Unlike typical marketers or salespersons, Defendants are in the unique position to sign up an unsuspecting consumer for these Plans because, as the consumer's credit card company, Defendants already

7

have his or her credit card number(s) on file.

25.     Defendants market, offer, and sell ancillary products to New Mexico consumers through a number of different channels, including but not limited to:

a.     **Online and direct mail marketing**, in which Defendants may ask that consumers "check the box" to initiate the Plan. This marketing method requires an affirmative action by the consumer to enroll, such as checking a box or initialing a monthly statement, other mailer or online form in a designated space to authorize enrollment.

b.     **Telemarketing**, where consumers may be asked to press a button on the telephone keypad or verbally agree in order to initiate the Plan.

26.     Defendants have a financial motive to enroll as many New Mexico consumers as possible into these highly lucrative ancillary product schemes. Additionally, upon information and belief, individual telemarketers are incentivized to enroll as many cardholders as possible because their compensation is: (a) commission-based; (b) determined by the number of cardholders they enroll; and/or (c) based on some other form of evaluation and compensation scheme.

27.     Unfair, deceptive, and unconscionable practices are rife in the marketing of Defendants' products, including their Payment Protection Plans.

28.     Defendants' telemarketers and "customer service" representatives employ an array of deceptive sales tactics to elicit cardholders into communicating some affirmative response, knowing that the cardholders do not actually understand that they are supposedly agreeing to purchase an ancillary product.

29.     Defendants' telemarketers characterize the call as a courtesy to thank cardholders

and remind them of the benefits they already get through their credit card agreement, *e.g.,* cash back, airline miles, rewards, etc.; however, they are in fact calling to sell the consumer ancillary products such as Payment Protection.

30.   Defendants' "customer service" representatives may speed through, skip altogether, or alter the text of the information they are required to provide to cardholders. Upon information and belief, this is done in an effort to make these disclosures sound like confusing legalese. These telemarketers conclude by saying "OK?" or by asking if the person heard them or understood, knowing that such a question will almost always elicit an affirmative response such as "ok" or "yes."  Although the cardholder believes he or she has just listened to a courtesy call, Defendants treat any affirmative response elicited by the telemarketer as the cardholder's agreement to enroll in the ancillary plan. So while these cardholders may have said "ok" or "yes" at the conclusion of the call; no reasonable person listening to the recordings of these calls (if they exist) would conclude that the cardholder was giving his or her knowing, meaningful consent to be charged a monthly fee for enrollment in the Plan.

31.   Another tactic Defendants' telemarketers use is to offer to send the cardholder a "packet of information" about the Plan. Defendants treat an affirmative response to this inquiry as authorization for paid enrollment, even though the consumer does not understand or believe that he or she has agreed to purchase anything.

32.   Citi has such a "packet of information" for each of the Plans offered. Although Defendants are required to provide enrollees with this information, many New Mexico consumers never receive the packets Defendants allegedly send out. Moreover, those consumers who actually receive the packet may ignore or disregard it because they do not understand that they had already been enrolled in the Plan. These consumers may reasonably assume the

information packet is just another piece of junk mail from a credit card company. While a cardholder who accepted Defendants' offer to send information about the Plan may recognize what the packet relates to, the consumer reasonably assumes that he or she must take further steps before becoming enrolled in the Plan. If the slammed consumer simply throws out the packet without reading it, signing it, or conferring with Citi about it, he or she is nevertheless enrolled in the Plan as a result of Defendants' deceitful practices described here.

33.     Defendants also utilize the card activation process as another way to wrongfully enroll New Mexico consumers. Defendants tell each cardholder that he or she must activate the credit card by calling a specific number, provided by Defendants, from the cardholder's home or primary phone number. Defendants take this opportunity to sell ancillary products, like Payment Protection, to unsuspecting cardholders who may believe that the information being provided is related to the card being activated and not an additional, separately charged service.

34.     Many New Mexico cardholders, accustomed to the legal language and fine print received from a credit card company, like Citi, become immune to the terms and conditions communicated to them and, thus, are particularly susceptible to believing that they are listening to some legal text rather than a "sales pitch."  Because of this, a consumer often will reflexively reply "ok" but has no idea that Defendants use this general affirmative response to sign up the consumer for an ancillary product. These consumers have no idea that they have "purchased" an additional product or service.

35.     Upon information and belief, Defendants also enroll some cardholders in Payment Protection even if the consumer did not provide an affirmative response during these phone calls. In such instances, Defendants have no proof of affirmative assent because there is (a) no affirmative response on the recording; (b) a clear rejection of the offer; or (c) no record of the

call. The cardholder has been "slammed," that is, involuntarily enrolled in the Plan without his or her knowledge or consent.

36.     Each of the aforementioned instances is not a typical telemarketing call. Defendants' telemarketer does not need the consumer to provide his or her credit card number or any additional information to purchase the product because the telemarketer *is* the credit card company. As a result, Defendants can charge the consumer's account when there has been no clear and knowing consent given.

> **2.     New Mexico consumers who have been "slammed" with ancillary products receive little to no relief from Defendants.**

37.     Defendants know that slamming frequently occurs. In fact, the "refund" process itself is set up on the assumption that consumers have been deceived and do not understand that they have been enrolled. When a New Mexico consumer calls within thirty (30) days of being enrolled, they are supposed to get his or her money refunded with no questions asked. At that time, Defendants make no effort to determine how it came to be that the cardholder was enrolled without his or her authorization.

38.     Many cardholders have no idea they are enrolled in an ancillary product plan and do not notice or appreciate the meaning of the line-item charge for the Plan on their credit card bills. This is because the charge is listed as one of the cardholder's monthly purchases.

39.     Some cardholders have accounts that do not require close inspection of monthly statements. This may be because they (a) are not making new purchases on the account; (b) may simply be seeking to pay off the balance; (c) have taken advantage of a balance transfer offer; or (d) utilized the account to make a single purchase. Others simply do not receive a monthly bill and/or may be enrolled in auto pay.

40.     Consumers may pay this hidden charge month after month for a period of time

11

before becoming aware of it. For online accounts, the charges for these Plans are often posted to a cardholder's account on the last day of each statement period. That statement is then archived. A cardholder may review current activity on their account regularly; yet, never see the charge billed to their account on the last day of the previous billing cycle's statement because of Defendants' "auto-archive" policy.

41.      In addition to the obvious unfairness of enrolling cardholders without their valid authorization, Defendants reap an extra windfall because these enrollees will never invoke the supposed benefits of the Plans for which they were charged because they do not even know they may do so.

42.      If a cardholder does not discover the additional monthly charge for the Payment Protection Plan before 30 days have passed from the date of his or her alleged enrollment in and/or purchase of the Plan, Defendants will not automatically refund the overpayments to the cardholder.

43.      Cancellation and disputes about enrollment in the Plans are so widespread that Defendants use template form letters to send to slammed New Mexico consumers who complain. Moreover, instead of "coming clean" to these aggrieved consumers, Defendants make it exceedingly difficult for them to get relief, such that many New Mexico consumers give up hope of ever getting their money back after paying for a product they did not request and did not use.

**II.    Defendants Misrepresent and Fail to Disclose the True Nature of Payment Protection.**

> **A.    Defendants increase their revenue stream and avoid state regulation by failing to disclose and to designate Payment Protection as insurance products**.

44.      The ancillary products at issue in this Amended Complaint, including but not limited to Payment Protection, are not designated by Defendants as registered insurance products

12

under New Mexico law, and Defendants are not insurance companies.

45.     Defendants do not market Payment Protection as an insurance product. Payment Protection Plans are not registered or identified as insurance products with the Public Regulation Commission for the State of New Mexico, which is tasked with the responsibility of overseeing the insurance industry in New Mexico, or other appropriate authorities.

46.     Defendants do not designate Payment Protection as an "insurance product."  By so doing, Defendants avoid state regulation and charge New Mexico consumers higher fees for these ancillary products.

47.     Payment Protection Plans are unregulated as to their terms, conditions and fees, such that these Plans are highly profitable.

**B.      Defendants sell Payment Protection to New Mexico consumers who can receive no benefit from the coverage offered.**

48.     The Payment Protection Plans at issue in the Amended Complaint offer little to no benefit to New Mexico consumers.

49.     Defendants' Plans have been the subject of frequent criticism from consumer advocates for several reasons. For example, Defendants may not disclose to consumers that under the terms and conditions of the Plan, cardholders are not permitted to use their credit card while invoking Payment Protection benefits, which is the very time when cardholders most often need to use the credit card. Additionally, Defendants knowingly market Payment Protection Plans to elderly consumers, for whom benefits may be of little or no value. Defendants know that their conduct is directed towards elderly consumers because they have the consumers' dates of birth on file.

50.     The main benefit of Defendants' Payment Protection Plans is that they suspend payment obligations when the borrower's income stream is lost due to unemployment, disability,

or unforeseen event. But for those on a fixed income, such as elderly New Mexicans, any such "protection" may be illusory because cardholders are ineligible to receive benefits. As a result, the cardholder pays a monthly fee for a product that the consumer is not able to use.

51.     Defendants market Payment Protection through direct mail, online and over the phone. Citi represents Payment Protection as a product that pays the required minimum monthly payment due on the consumer's credit card account. Defendants advise New Mexico consumers that the Payment Protection Plan fee is for a limited period of time under certain triggering circumstances, *e.g.*, involuntary unemployment, illness, or changes in family status, which supposedly prevents the cardholder's account from becoming delinquent during these unexpected circumstances. However, benefits under the Plan are not so readily available.

52.     Citi's marketing for this ancillary product proclaims that it provides "[s]o much protection and peace of mind for so little!"  However, Defendants' "protection and peace of mind" tagline misrepresents the true nature of Payment Protection; specifically, that Citi imposes Payment Protection fees on New Mexico consumers who did not authorize charges or who, at the time of enrollment, were not eligible for the alleged benefits provided by the Plan. Defendants misrepresent that their ancillary products provide protection "against unexpected loss of income" because their "peace of mind" message fails to disclose and misrepresents that Citi's Payment Protection has many hidden, variable, and narrow restrictions on use.

53.     Defendants market their Payment Protection Plans to individuals who do not qualify for the purported benefits of the Plans. The numerous qualifications and restrictions set forth in Defendants' fine print expose the advertised "protection" as an illusion. For example, because Defendants do not determine consumers' eligibility for the Plan's various benefits before marketing, offering, and selling it to New Mexico consumers, Defendants knowingly

14

enroll, and charge, these individuals for a product that the consumers can never use.

54.     Defendants market Payment Protection as a service for consumers to safeguard their credit card accounts by suspending or crediting the required minimum monthly credit card payments due, or by permanently canceling the credit card account. The availability of either of these services depends on whether the cardholder has experienced a certain, specifically defined circumstance, as provided by terms and conditions of the Plan.

55.     Upon information and belief, consumers are not required to pay monthly interest charges or the ancillary product fees for the month in which Plan benefits are being utilized. However, when minimum monthly payments are credited under the Plan, the monthly interest charges as well as the Payment Protection fee and other ancillary fees continue to accrue without adequate disclosure to New Mexico consumers.

56.     The Payment Protection fee and other ancillary fees accrue and are imposed separately from monthly interest charges and independent of standard account maintenance fees. The Payment Protection fee and other ancillary fees are charges assigned to cover a particular service, *not* a general charge for Defendants' extension of credit.

57.     Each Payment Protection Plan contains different terms and conditions, which are complicated and varied. However, each of the Plans provide for some form of payment suspension upon the occurrence of one of the following defined events: *Job Loss*; *Short-term or Long-term Disability*; *Life Event*;[5] and *Death*. The restrictions, limitations, and exclusions associated with these benefit-triggering events are expansive and constantly evolving.

58.     Defendants do not make a reasonable effort and do not undertake an investigation, including review of information in their possession regarding the cardholder, to determine if

---

[5]     A *Life Event* includes events such as marriage, child birth, adoption, first-time college entrance, home move, and other closely defined events.

Payment Protection coverage would apply to the cardholder. Such information may include health status, name of last employer, and date of birth, each of which would assist Defendants in knowing whether a particular cardholder is eligible for Payment Protection benefits.

59.     Defendants aggressively market and target New Mexico cardholders for enrollment in Payment Protection, even when Defendants have information in their possession indicating that the product may have limited or no value to the particular consumer.

60.     Telephone marketing scripts are incomplete, indecipherable, misleading, and use obfuscatory language. Similarly, if provided, the written materials or "information" are incomplete, indecipherable, misleading, and contain obfuscatory language.

61.     One example of this misleading and obfuscatory language is Defendants' failure to disclose that Payment Protection is actually akin to an insurance product as noted above. Despite this fact, marketing materials carefully avoid any use of the word "insurance."  The materials may, however, refer to "premiums," "claims" or "benefits," which indicates that Defendants internally regard and acknowledge this as an insurance product.

62.     Defendants do not adequately describe or explain the Plan's exclusions to New Mexico consumers. Because of this, New Mexico consumers are not able to determine whether they lack certain characteristics or fail to satisfy certain criteria that would allow them to be eligible for benefits under the Payment Protection Plans, even though Citi has a common practice of imposing limitations on full coverage based on exclusions.

63.     Exclusions found in the written materials for Defendants' ancillary products, which may only be provided *after* enrollment (if at all), include, but are not limited to, the following:

    a.     Some Payment Protection benefits do not apply to retired persons. This most often affects "elderly" consumers;

16

b.      Some Payment Protection benefits do not apply to persons employed part time or seasonally;

c.      Some Payment Protection benefits do not apply to persons employed by family members, or to those not employed;

d.      Payment Protection benefits do not apply for the first 30 days of unemployment or disability;

e.      With limited exceptions, Payment Protection job loss benefits do not apply unless you initially qualify for state or federal unemployment benefits;

f.      Payment Protection job loss benefits do not apply to persons who have not held their job for at least 90 days;

g.      Payment Protection job loss benefits do not apply unless a person registers and remains registered for work at a recognized employment agency;

h.      Payment Protection benefits do not apply unless the consumer notifies the company and provide verification within a set period of time;

i.      Payment Protection coverage is limited to per-calendar-year maximums;

j.      Payment Protection disability benefits require continued certification by a physician for the duration of the injury or illness;

k.      Finance charges, monthly fees (including for PaymentAid and other ancillary products), past due and over credit line/limit amount charges will continue to accrue during the period of Payment Protection; and

l.      Cash advances are not allowed during the Payment Protection period.

64.     Defendants fail to disclose and/or misrepresent these exclusions in their promotion and sale of their ancillary products, including Payment Protection.

65.     Retired New Mexico cardholders, many of whom are senior citizens, are charged for Defendants' ancillary products, even though they are categorically excluded from receiving many of the Plan's benefits. Defendants do not ask customers whether they are retired.

66.     New Mexico consumers who are part-time workers, seasonal workers, and workers concluding an employment contract (including ending a military tour of duty) are also limited or categorically excluded from receiving benefits under the Plan. For example, to qualify for benefits, one needs to work a set number of hours a week in employment considered to be permanent. However, Defendants make no effort to investigate whether any of the New Mexico consumers they charge for Payment Protection are part-time, seasonal or military workers. Moreover, these terms are not adequately communicated or defined in written materials.

67.     The Plans limit benefits available to disabled persons. However, Defendants nevertheless fail to affirmatively inform these individuals of the limitations in benefits when they are enrolled. In fact, Defendants do not ask customers whether they are disabled.

68.     Defendants do not have a process in place to maintain current and accurate consumer statuses. Thus, when consumers' statuses change, Defendants continue to charge these New Mexico consumers for Payment Protection even though they may no longer be eligible for its benefits.

69.     If New Mexico consumers are eventually provided with written materials, the materials themselves are confusing. Based on what is provided, it is virtually impossible for the consumer to determine all of the exclusions and limitations of Payment Protection, or the value of the product.

70.     The cost of Payment Protection is set forth in a confusing and misleading manner. The premium for Payment Protection is set at a dollar amount per $100 of the ending statement

balance for each particular month. For example, upon information and belief, the monthly cost of Payment Protection is $0.89 for every $100 of the previous billing period's new balance, and IdentityMonitor costs an additional $12.95 per month. Thus, a New Mexico cardholder who charges $1,000 a month, and even pays off his or her balance every month, pays $106.80 per year for Payment Protection and $155.40 annually for IdentityMonitor. Defendants automatically add these amounts directly to the consumer's monthly credit card account statement. These Payment Protection monthly fees are independent of standard account maintenance charges such as interest.

71.    Defendants' "customer service" support is set up in such a way that New Mexico consumers cannot easily cancel ancillary products or receive answers to benefit questions, nor can they easily file claims or receive benefits for filed claims.

72.    Upon information and belief, employees at Defendants' Payment Protection call centers are given authority to deny claims immediately over the phone, but do not have authority to approve payment of benefits to claimants in the same manner.

73.    Upon information and belief, when a consumer calls Citi to cancel Payment Protection, Defendants' "customer service" representatives are trained to attempt to talk the consumer out of canceling by "upselling" the supposed benefits of Payment Protection.

74.    When claims for Payment Protection benefits are denied, Defendants have not implemented a process through which a consumer's Payment Protection premiums are refunded, even if the consumer is deemed to be per se ineligible for Payment Protection benefits. In fact, if a New Mexico consumer is denied Payment Protection benefits, Defendants do not remove the consumer from Payment Protection enrollment going forward, nor do Defendants inform the consumer of his or her continued obligations to pay for Payment Protection, even though the consumer has been deemed to be ineligible for benefits.

75.     Although heralded as coverage designed for a consumer's peace of mind and for use when times get tough, Citi's Payment Protection Plan is designed to prey on the financially insecure. Payment Protection is virtually worthless because of the (a) numerous restrictions that are imposed; (b) exclusions of benefits; and (c) administrative and bureaucratic hurdles that are placed in the way of New Mexico consumers who attempt to secure payments from Defendants under Payment Protection coverage.

76.     As a result of their unfair, deceptive, and unconscionable marketing practices related to the sales of Payment Protection, Defendants have substantially increased profits.

### COUNT I
### VIOLATION OF THE NEW MEXICO UNFAIR PRACTICES ACT ("NMUPA")

77.     The State re-alleges all prior paragraphs of this Amended Complaint as if set forth fully herein.

78.     The Attorney General of the State of New Mexico is specifically charged with administration of NMUPA, and may act *sua sponte* as the agent and legal representative of the State in civil proceedings to enforce the statute. *See* N.M. Stat. Ann. §§ 57-12-8 & 57-12-15.

79.     NMUPA provides that unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful. *See* N.M. Stat. Ann. § 57-12-3.

80.     NMUPA defines unfair or deceptive trade practice as follows:

> "unfair or deceptive trade practices" means an act specifically declared unlawful pursuant to the Unfair Practices Act [57-12-1 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the same, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person and includes:

* * *

(5)   representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that the person does not have;

* * *

(14)   using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;

(15)   stating that a transaction involves rights, remedies or obligations that it does not involve.

* * *

(17)   failing to deliver the quality or quantity of goods or services contracted for.

N.M. Stat. Ann. § 57-12-2(D).

81.   NMUPA defines unconscionable trade practices as follows:

'unconscionable trade practice' means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts that to a person's detriment:

(1)   takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2)   results in a gross disparity between the value received by a person and the price paid.

N.M. Stat. Ann. § 57-12-2(E).

82.   Defendants' policies and practices associated with their marketing, selling, and administering of the ancillary products and services at issue in this Amended Complaint,

including Payment Protection services, constitute unfair and deceptive trade practices *and* unconscionable trade practices under NMUPA; therefore, Defendants' conduct is unlawful.

83.    Defendants' conduct, as described in this Amended Complaint, constitutes multiple, separate violations of NMUPA.

84.    Defendants have engaged in unfair and deceptive practices, as defined by sections 57-12-2(D)(5), (14), (15) and (17) of NMUPA. Citi's unfair and deceptive conduct includes, among other things: (a) representing that the ancillary products have characteristics, uses and benefits that they do not have; (b) representing that the Plans are of a particular standard, quality, or grade when they are of another; (c) exaggerating or employing ambiguity regarding ancillary products' benefits and limitations which deceived or tended to deceive New Mexico consumers; (d) advertising the ancillary products as one thing and failing to deliver ancillary products of the same quality as what was contracted for; and (e) engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding. As a result of Defendants' and their telemarketers' false or misleading statements about these ancillary services, including Payment Protection products, Defendants have further engaged in deceptive and fraudulent practices that are prohibited and unlawful under NMUPA. *See* N.M. Stat. Ann. §§ 57-12-3 & 57-12-22.

85.    Defendants engaged in unconscionable trade practices, as defined by section 57-12-2(E) of NMUPA, in connection with the sale of, as well as in their offers to sell, their Plans to New Mexico consumers. These unconscionable trade practices include, but are not limited to, Defendants grossly and unfairly: (a) targeting unsuspecting and vulnerable cardholders; (b) taking advantage of New Mexico consumers' lack of knowledge and experience with complex financial services; (c) pursuing New Mexico consumers who lack the capacity to understand the Payment Protection services being offered and/or sold; and (d) utilizing other improper methods

22

described in this Amended Complaint. Furthermore, as described in the Amended Complaint, Defendants' policies and practices associated with the marketing and sale of Citi's ancillary products result in a gross disparity between the value received by consumers and the price paid. Defendants have engaged in unconscionable trade practices that are prohibited and unlawful under NMUPA. *See* N.M. Stat. Ann. §§ 57-12-3 & 57-12-22.

86.     Each wrongful act committed by Defendants in violation of the statute is an unfair, deceptive and unconscionable act or practice in the conduct of the trade or commerce, which is unlawful under NMUPA. *See* N.M. Stat. Ann. §§ 57-12-3, 57-12-11 & 57-12-22; *see also State ex rel. Stratton v. Sinks*, 741 P.2d 435, 442 (N.M. App. 1987). For example, each time Defendants enrolled a New Mexico consumer in a Payment Protection Plan or similar ancillary product without his or her assent is a separate violation of the Act. Likewise, each enrollment by Defendants of a New Mexico consumer who is ineligible for the product's benefits (due to age, work status, disability, or any other reason) is a separate violation of the Act. Similarly, each time Defendants enrolled a New Mexico consumer in a Payment Protection Plan or similar ancillary product but failed to disclose all material restrictions, limitations, and exclusions is a separate violation of the Act.

87.     Defendants' violations were, and are, willful, deceptive, unfair, and unconscionable. Defendants are aware of the violations, including the widespread use of slamming practices and the enrollment of New Mexico cardholders who are ineligible for benefits offered under Payment Protection. Yet, Defendants fail to adequately and affirmatively take steps to cure the violations or refund moneys owed.

88.     Defendants' willful violations justify assessing civil penalties of up to $5,000 for each violation of the Act, as authorized by N.M. Stat. Ann. § 57-12-11.

89.     The State has determined that Defendants are using, and have used, methods, acts, and practices prohibited by NMUPA, such that the imposition of an injunction against Defendants prohibiting the conduct set forth herein is in the public interest. Therefore, to prevent Defendants from continuing to engage in the violations as set forth herein, the State hereby seeks restitution for all New Mexico consumers injured by Defendants' unlawful conduct as well as a temporary or permanent injunction prohibiting Defendants from engaging in the unfair, deceptive, and unconscionable policies, practices, and conduct described in this Amended Complaint. *See* N.M. Stat. Ann. § 57-12-8.

90.     To the extent necessary and deemed applicable, and to avoid Defendants removing assets from New Mexico, the State hereby seeks a Writ of Ne Exeat forbidding Defendants from leaving the state of New Mexico, or removing property or assets therefrom, until a determination of the issues has been made. *See* N.M. Stat. Ann. § 57-12-17.

### COUNT II
### VIOLATION OF REGULATION Z,
### AS PROMULGATED UNDER THE DODD-FRANK ACT

91.     The State re-alleges all prior paragraphs of this Amended Complaint as if set forth fully herein.

92.     The Attorney General of the State of New Mexico is authorized to bring a civil action in the name of the State against Defendants to enforce regulations prescribed by the CFPB and to secure remedies for violations of such regulations. *See* 12 U.S.C. § 5552(a)(2)(B).

93.     Regulation Z, 12 CFR Part 1026, was issued by the CFPB pursuant to its rulemaking authority under the Dodd-Frank Act, 12 U.S.C. § 5532(a). Regulation Z sets forth rules relating to the disclosure of terms, conditions, and fees applicable to Payment Protection Plans like Defendants' at issue in this Amended Complaint.

94.     Defendants were required to comply with all disclosure requirements of Regulation Z, including those disclosure rules applicable to their Payment Protection products.

95.     Upon information and belief, Defendants did not (and do not) comply with the disclosure rules of Regulation Z that are applicable to their Payment Protection products.

96.     Upon information and belief, when a New Mexico consumer "purchased" Payment Protection by telephone, Defendants failed to comply with the disclosure requirements set forth in 12 CFR § 1026.4(d); specifically, Citi

a.     failed to disclose, orally, that Payment Protection is not required by Defendants to obtain a credit card;

b.     failed to disclose, orally, the fee, terms and conditions of coverage for Payment Protection;

c.     failed to disclose, orally, that interest will continue to accrue during any suspension period;

d.     failed to maintain evidence that the consumer, after being provided the necessary disclosures, affirmatively elected to purchase Payment Protection; and

e.     failed to mail the required disclosures, as applicable, within three business days after the telephone purchase.

97.     Upon information and belief, Defendants offered voluntary Payment Protection but did not comply with the disclosure requirements for these services and charges related thereto in violation of 12 CFR §§ 1026.6(b)(3)(ii)(F) and 1026.6(b)(5).

98.     Defendants' violations of these disclosure requirements of Regulation Z constitute violations of rules prescribed by the CFPB pursuant to its authority under the Dodd-Frank Act;

25

violations which are enforceable by the State in an action brought by its Attorney General. *See* 12 U.S.C. § 5552(a)(2)(B). As such, the State seeks any and all appropriate legal and equitable relief available for such violations, including the following relief authorized by the Dodd-Frank Act, 12 U.S.C. § 5565:

      a.     refund of monies paid by New Mexico consumers for these Payment Protection products;

      b.     restitution;

      c.     disgorgement or compensation for unjust enrichment;

      d.     payment of damages or other monetary relief;

      e.     public notification regarding Defendants' violations, including the costs of notification;

      f.     costs incurred by the State in connection with prosecuting this action; and

      g.     first-tier civil penalties of up to $5,000 for each day during which Defendants' violation or failure to pay continues.

99.     Upon information and belief, Defendants knowingly violated the disclosure requirements of Regulation Z and such knowing violations justify assessing third-tier civil penalties of up to $1,000,000 for each day during which such violation continues. *See* 12 U.S.C. §§ 5565(a)(H), 5565(c)(1) & 5565(c)(2)(C).

### *RELIEF*

**WHEREFORE**, the State of New Mexico, by and through its Attorney General, respectfully prays that this Court grant the following relief:

1.     Entering Judgment in favor of the State in a final order against each Defendant;

2.     Enjoining Defendants and their employees, officers, directors, agents, successors, assignees, merged or acquired predecessors, parent or controlling entities,

subsidiaries, and all other persons acting in concert or participation with them, from engaging in unfair or deceptive practices and unconscionable conduct in violation of New Mexico law and ordering temporary, preliminary or permanent injunction;

3.   Forbidding Defendants and their employees, officers, directors, agents, successors, assignees, merged or acquired predecessors, parent or controlling entities, subsidiaries, and all other persons acting in concert or participation with them, from leaving the State of New Mexico, or removing property and assets therefrom, until a determination of the issues has been made;

4.   Declaring that each act of Defendants described in this Amended Complaint constitutes a separate violation of New Mexico law;

5.   Imposing civil penalties of up to $5,000 for each repeated and willful violation of NMUPA, pursuant to N.M. Stat. Ann. § 57-12-11;

6.   Awarding judgment against Defendants for restitution for all New Mexicans injured by Defendants' acts described in this Amended Complaint, as authorized by N.M. Stat. Ann. § 57-12-8;

7.   Granting all appropriate legal and equitable relief with respect to Defendants' violations of Regulation Z, prescribed by the CFPB under the Dodd-Frank Act, as authorized by 12 U.S.C. § 5565 and including:

    a.   refund of monies paid by New Mexico consumers for these Payment Protection products;

    b.   restitution;

    c.   disgorgement or compensation for unjust enrichment;

    d.   payment of damages or other monetary relief;

    e.   public notification regarding Defendants' violations, including the costs of notification;

    f.   costs incurred by the State in connection with prosecuting Defendants for their violations of Regulation Z, as prescribed by the CFPB under the Dodd-Frank Act;

    g.   first-tier civil penalties of up to $5,000 for each day during which Defendants violation or failure to pay continues; and

    h.   third-tier  civil penalties of up to $1,000,000 for each day during which such violation continues;

and

8.     Granting the State:

a.     The cost of investigation and reasonable attorneys' fees, as authorized by
       NMUPA;

b.     Post-judgment interest; and,

c.     All other relief as provided by law and/or as the Court deems appropriate
       and just.

Date: July 2, 2013                         Respectfully submitted,

                                           THE STATE OF NEW MEXICO,
                                           ATTORNEY GENERAL GARY KING

                          BY:     /s/  Turner W. Brach
                                  Turner W. Branch (NM Bar No. 295)
                                  THE BRANCH LAW FIRM
                                  2025 Rio Grande Boulevard, NW
                                  Albuquerque, NM 87104
                                  (505) 243-3500 (Phone)
                                  (505) 243-3534 (Fax)

                                  Randall K. Pulliam
                                  Allen Carney
                                  CARNEY BATES & PULLIAM PLLC
                                  11311 Arcade Drive, Suite 200
                                  Little Rock, AR  72212
                                  (501) 312-8500 (Phone)
                                  (501) 312-8505 (Fax)

                                  Scott Fuqua
                                  ASSISTANT ATTORNEY GENERAL
                                  OFFICE OF NEW MEXICO ATTORNEY GENERAL GARY KING
                                  408 Galisteo Street
                                  Santa Fe, NM 87501
                                  (505) 827-6000 (Phone)
                                  (505) 827-6036 (Fax)

                                  Richard Golomb
                                  Kenneth J. Grunfield
                                  GOLOMB & HONIK, P.C.

1515 Market Street, Suite 1100
Philadelphia, PA 19102
(215) 989-4381 (Phone)
(215) 985-4169 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will cause a copy of the foregoing to be served on all counsel who have entered an appearance in this matter.


BY:   _/s/   Turner W. Branch_____
          Turner W. Branch